**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SERGIO MATA AGUILAR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL NO. EP-13-CV-00141-FM** |
| | § | |
| **ELIAS GASTELOS, JR., Chief Counsel;** | § | |
| **GUADALUPE R. GONZALEZ, Immigration** | § | |
| **Judge; BOARD OF IMMIGRATION** | § | |
| **APPEALS,** | § | |
| | § | |
| **Defendants.** | § | |

## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

TO THE HONORABLE UNITED STATES JUDGE:

NOW COMES, Plaintiff, *pro se*, and Elias Gastelos, Jr., Chief Counsel, *et al*., Defendants, by and through Robert Pitman, United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, and move this Court to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted. In support of this Motion, Defendants would state to the Court as follows:

### I.    BACKGROUND

On or about April 30, 2013, Sergio Mata Aguilar ("Plaintiff") filed a Writ of Habeas Corpus in the Western District of Texas, El Paso Division ("Habeas"). Although Plaintiff used the Civil Rights Complaint form, the only relief sought is a stay of removal. (Habeas, p. 6). Plaintiff complains about whether his state criminal convictions are proper, the evidence used in his removal proceedings, the use of video teleconferencing for his hearings, the use of Fifth Circuit law, and the conspiracies by government officials that deprived him of his due process rights. (Habeas). All of the complaints in

1

Plaintiff's Habeas Petition have already been adjudicated by other federal courts. This Court does not have jurisdiction to hear Plaintiff's claims and Plaintiff has failed to state any claims upon which relief can be granted. Therefore, this Petition is without merit and should be denied.

## II. FACTS

Plaintiff is a native and citizen of Mexico whose status was adjusted to that of a lawful permanent resident ("LPR") on May 4, 1992. (Exh. A). He is unmarried, but formerly was involved with his common law wife, Diane Sanchez. (Exh. B). The couple met in 1985 and remained together until 2003. The relationship resulted in two children, Sergio, Jr. and Blanca. *Id.*

On May 25, 1990 Plaintiff was convicted by the State of New Mexico, Bernalillo County Metropolitan Court of Battery – Domestic Violence. (Exh. A, p. 3). On February 21, 1997, Plaintiff was convicted by State of Mexico, Bernalillo County Metropolitan Court of Battery – Domestic Violence. *Id.* On September 8, 2006, the State of New Mexico, County of Bernalillo, Second Judicial District Court convicted Plaintiff of Battery Upon a Police Officer, for which he was sentenced to eighteen months imprisonment. *Id.* On May 19, 2011, the Department of Homeland Security ("DHS") issued the Plaintiff a Notice to Appear ("NTA"), charging him with removability for these convictions. (Exh. B).

On September 19, 2011, Plaintiff's adult U.S. Citizen son, Sergio, Jr. filed a Petition for Alien Relative, Form I-130, on Plaintiff's behalf. (Exh. C). U.S. Citizenship and Immigration Services ("USCIS") denied the petition on December 11, 2012. (Exh. D). On a motion to reconsider, USCIS reopened the petition and on December 26, 2012 sent Plaintiff a Notice of Intent to Deny Petition for Alien Relative stating he failed to meet his required burden by failure to provide sufficient evidence establishing he and Sergio, Jr. actually lived together or that he held Sergio, Jr. out to be his own or that

he provided for Sergio, Jr.'s needs or demonstrated a general concern for him. (Exh. E). USCIS decision on March 1, 2013 denied the I-130 Petition. (Exh. F). Plaintiff was issued an order of removal on March 13, 2012, which he appealed to the Board of Immigration Appeals ("BIA") but the Immigration Judge ("IJ") reopened proceedings and entered a second order of removal on March 18, 2013, which Plaintiff also appealed. (Exh. G). Plaintiff was ordered to be removed from the United States to Mexico on April 1, 2013 by Immigration Court. (Exh. H).

Plaintiff filed a habeas petition challenging his detention in the New Mexico federal district court on December 3, 2012. (Exh. I). That habeas petition was denied. *Id.* Plaintiff filed a complaint in a New Mexico federal district court on March 28, 2013 challenging his removal proceedings, the denial of his son's I-130 petition, and actions by the BIA. (Exh. J). Plaintiff's motion to proceed IFP was denied and the case was dismissed. *Id.* On April 25, 2013 Plaintiff filed another habeas petition before another New Mexico federal district court. (Exh. K). Proposed findings and recommended disposition to deny the habeas have been submitted by a United States Magistrate Judge. *Id.* On July 19, 2013 Plaintiff filed another habeas petition. (Exh. L).

Plaintiff then filed a Complaint in the Western District of Texas on April 30, 2013. Plaintiff seeks no monetary relief and is not suing Defendants in their personal capacity to obtain monetary relief but rather seeks declaratory injunctive relief in the form of a Stay of Removal. (Habeas) Plaintiff's Complaint states that he has not exhausted his administrative remedies, has not sought relief from the appropriate administrative officials, and has not begun other lawsuits in state or federal court dealing with the same facts in this action or relating to the conditions of his imprisonment. (Habeas, pp. 6,7).

### III.    RELEVANT LAW

**A.  Summary Of Legal Standards.**

The Federal Rules of Civil Procedure provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  Fed. R. Civ. P. 12(h)(3);12(b)(1).  The Plaintiff bears the burden of establishing subject matter jurisdiction.  Fed. R. Civ. P. 8(a); *see Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (party invoking jurisdiction bears burden of producing necessary facts to establish subject matter jurisdiction.  *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 769 (4th Cir. 1991); *Data Disc, Inc. v. Systems Tech. Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  In determining jurisdiction, the court may base its decision on the complaint alone, the complaint supplemented by undisputed facts, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The burden of proof is on the party asserting jurisdiction.  *Id.*

A Rule 12(b)(6) motion to dismiss should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Bauer v. Texas*, 341 F.3d 352, 356 (5th Cir. 2003).  A court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Kaiser Aluminum, etc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105 (1982) (quoted in *Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.*, 864 F. Supp. 14, 15 (W.D. Tex. 1993), *affirmed*, 30 F.3d 627 (5th Cir. 1994)).

Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action. A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Millburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). *See Capital Parks, Inc.*, 30 F.3d at 629, quoting *Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc.*, 804 F.2d 879, 881 (5th Cir. 1986) ("A court's decision to dismiss for failure to state a claim may be upheld 'only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations.'"). *See also O'Quinn v. Manuel*, 773 F.2d 605, 608 (5th Cir. 1985).

**B.      Judicial Review Of Immigration Matters.**

It is well established that judicial review of immigration matters is limited. *I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 423 (1999) (citations omitted) ("We have recognized that judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'"); *accord Reno v. Flores*, 507 U.S. 292, 305-06 (1993); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 101 n.21 (1976) ("the power over aliens is of a political character and therefore subject only to narrow judicial review"); *Mathews v. Diaz*, 426 U.S. 67, 79-82 (1976) ("Any rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution."). The Supreme Court has instructed that the former Immigration and Naturalization Service ("INS") (now the Department of

Homeland Security ("DHS")), the BIA, and the Attorney General are to be afforded particular deference.  *See Aguirre-Aguirre*, 526 U.S. at 424.

The rule of deference is particularly compelling with respect to the exclusion of aliens, which "is a fundamental act of sovereignty."  *Gisbert v. Attorney General*, 988 F.2d 1436, 1440 (5th Cir. 1993) (citing *Mezei*, 345 U.S. at 210; *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950)); *accord Jean v. Nelson*, 727 F.2d 957, 964-65 (11th Cir. 1984) (en banc) (collecting cases), *aff'd*, 472 U.S. 846 (1985).   The Supreme Court "without exception has sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden,'" *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Boutilier v. I.N.S.*, 387 U.S. 118, 123 (1967)), and "has repeatedly emphasized that 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens," *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).   Accordingly, the Court's decisions likewise "underscore the limited scope of inquiry into immigration litigation" governing the admission and exclusion of aliens.  *Fiallo, supra; Kleindeinst*, 408 U.S. at 766, 770; Mezei, 345 U.S. at 210 ("Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.").

As the Supreme Court has recognized, "[t]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.   Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (citations and internal quotation marks omitted); *accord Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The power to regulate immigration –

an attribute of sovereignty essential to the preservation of any nation – has been entrusted by the Constitution to the political branches.").  Thus, the Supreme Court has repeatedly instructed that judicial review in immigration matters is narrowly circumscribed.  *See I.N.S. v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) ("judicial deference to the Executive Branch is especially appropriate in the immigration context"); *Miller v. Albright*, 523 U.S. 420, 434 n.11 (1998) (same); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (same).  Specifically, the Court has stated:

> Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult . . . Moreover, the I.N.S. is the agency primarily charged by Congress to implement the public policy underlying these laws . . . Appropriate deference must be accorded its decisions.

*I.N.S. v. Miranda*, 459 U.S. 14, 19 (1982) (citations omitted).

## IV.  ARGUMENT

Plaintiff's Complaint references wrongful admission of evidence and police reports, IJ said Plaintiff was eligible for various types of relief, complains about state criminal convictions, concerns about burden of proof, proper certification of evidence before the IJ, forum shopping, use of Fifth Circuit rather than 10th Circuit law, use of video teleconferencing in immigration hearings, and for these reasons, Plaintiff seeks a stay of removal so that he can litigate his removal proceedings. Plaintiff has already litigated these issues before the IJ and before federal courts in New Mexico. (Exhs H-L).  Additionally, since he has not claimed monetary damages or sued the Defendants individually, Plaintiff has not stated a *Bivens* claim.  His complaint is a habeas claim over which this Court cannot exercise jurisdiction.   Further, the federal defendants are entitled to immunity and Plaintiff has not exhausted his administrative remedies.  Plaintiff has not stated a due process claim.

**A. The Habeas Petition Should Be Dismissed For Failure To Name The Proper Defendant.**

Jurisdiction is not proper in this case because Plaintiff has failed to name the proper defendant. A habeas petition must be filed against the person having custody of the person detained. 28 U.S.C. § 2243. The Supreme Court has held that in cases challenging physical custody, "the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent." *See Rumsfeld v. Padilla*, 542 U.S. 426, 439 (2004); *see also* 28 U.S.C. § 2243 ("The writ or order to show cause, shall be directed to the person having custody of the person detained."). The Supreme Court has further made it clear concerning jurisdiction in this instance, the Court must ask itself who is the proper defendant and does this Court have jurisdiction over them. *Rumsfeld* at 439. Further, "the consistent use of the definitive article in reference to the custodian indicates that there is only one proper respondent to a given petitioner's habeas petition ... the person with the ability to produce the prisoner's body before the habeas court." *Id.* at 434 – 35. The Court also held that in accordance with the longstanding *Wales v. Whitney* case, the immediate custodian rule must stand. *Id.* at 435.

Here Plaintiff has named as defendants the ICE Chief Counsel, an immigration judge, and the Board of Immigration Appeals. None of the named defendants are the immediate custodian of Plaintiff and therefore this Court does not have jurisdiction over the habeas petition. *Rumsfeld v. Padilla*.

**B. The Defendants Named By Plaintiff In His Habeas Petition Are Not Proper Defendants Because They Have Immunity.**

Plaintiff has used a civil rights complaint form to file what is clearly a habeas petition since his only real claim for relief is a "stay of removal." (Habeas, pp. 1,6). Plaintiff also checked the block that asserts jurisdiction under *Bivens v. Six Unknown Named Agents of the Federal Bureau of*

*Narcotics.* (Habeas, p. 2). Plaintiff makes no monetary claims for relief nor has he stated that he is suing the defendants in their personal capacity. Therefore, Plaintiff has not stated a *Bivens* claim.

A *Bivens* action is an action that allows an individual to sue a federal employee for damages for violating an individual's Constitutional rights. *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ("*Bivens*"). In order to maintain a *Bivens* action in federal court, a plaintiff must show that a federal employee violated one of the plaintiff's established Constitutional rights, *see Maraziti v. First Interstate Bank,* 953 F.2d 520, 523 (9th Cir.1992), that an individual's established Constitutional right was violated by the federal employee while the employee was acting under the color of law, *Bivens,* 403 U.S. at 388, 91, that the federal employee is being sued in his or her individual capacity, *Vaccaro v. Dobre,* 81 F.3d 854, 857 (9th Cir.1996); *Daly–Murphy v. Winston,* 837 F.2d 348 (9th Cir.1987), and that there is no alternative way in which the plaintiff can seek relief for the violation of the plaintiff's Constitutional right, *Schweiker v. Chilicky,* 487 U.S. 412, 423 (1988). A *Bivens* claim cannot be asserted against the United States or an agency of the United States. *F.D.I.C. v. Meyer,* 510 U.S. 471, 484–86 (1994); *Cato v. U.S.,* 70 F.3d 1103, 1110–11 (9th Cir.1995). *Bivens* is not a mechanism for deterring the unconstitutional actions of a federal agency or the United States. *F.D.I.C.,* 510 U.S. at 484–86, 114 S. Ct. 996. Rather, the purpose of a *Bivens* action is to deter individual federal employees from committing Constitutional torts while acting under the color of law. *Correctional Services Corp. v. Malesko,* 534 U.S. 61, 70–71 (2001); *F.D.I.C.,* 510 U.S. at 485, 114 S.Ct. 996. A *Bivins* action cannot be brought against a federal employee in his or her official capacity because this would be deemed an action against the United States. *F.D.I.C. v. Meyer* at 484 – 86. Additionally, the Supreme Court has indicated that when Congress provides individuals with an alternative remedy for Constitutional torts committed by

federal employees, individuals may not seek relief under *Bivens. See Schweiker v. Chilicky,* 487 U.S. 412, 423,370(1988)("[When] Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies."). *Wages v. Internal Revenue Service,* 915 F.2d 1230, 1235 (9th Cir.1990). Finally, Plaintiff's *Bivens* claim cannot be maintained in this action because a *Bivens* claim must involve the violation of an individual's established Constitutional right and Plaintiff has not shown any violation of Constitutional rights. *Wages,* 915 F.2d at 1235. Therefore, this Complaint should not be considered a *Bivens* claim since the Defendants were not sued in their individual capacities.

*Bivens* actions, grant victims of Constitutional violations by federal agents a right of action against those individuals for compensatory and punitive damages. *Carlson v. Green* 446 U.S. 14, 21-22 (1980); *Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). In **Bivens**, the Supreme Court recognized an implied cause of action for money **damages** against federal officers who violate a plaintiff's Constitutional rights. 403 U.S. 388, 91 S.Ct. 1999 (1971). However, the Court has subsequently held *Bivens* actions to be precluded where Congress created an adequate statutory remedial scheme. *See Bush v. Lucas,* 462 U.S. 367 (1983). Indeed, even where the statutory scheme does not fully remedy the alleged harm, its existence may nonetheless make a *Bivens* remedy unavailable. *Schweiker v. Chilicky,* 487 U.S. 412, 428–29 (1988). In such circumstances, the key consideration for courts should be "the overall comprehensiveness of the scheme at issue, not the adequacy of the particular remedies afforded." *Dotson v. Griesa,* 398 F.3d 156, 166–67 (2d Cir.2005).

Here Plaintiff has made no monetary claims which again indicates Plaintiff's claims are not brought under *Bivens*. Additionally, Plaintiff has had multiple other statutory remedial schemes

available in federal courts which he has used for these same claims.   (Exhs. I-L).

### 1.   Special Factors Preclude *Bivens* Claims In The Immigration-Detention Context

As a threshold matter, any *Bivens* claims should be dismissed because a *Bivens* remedy should not be implied in this type of case. In *Bivens*, the Supreme Court took the extraordinary step of creating a private cause of action for damages under the Constitution – absent statutory authorization – after finding that there were "no special factors counseling hesitation" against implying such a remedy. 403 U.S. at 396. The Supreme Court has been cautious of extending *Bivens* to new contexts and has recognized such a remedy on just two occasions and only after determining there were no special factors precluding a judicially-created cause of action. *See Carlson v. Green*, 446 U.S. 14, 18-19 (1980); *Davis v. Passman*, 442 U.S. 228, 245 (1979). Thus, the Supreme Court has "in most instances . . . found a *Bivens* remedy unjustified," *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007), and "consistently refused to extend *Bivens* liability to any new context or new category of defendants," *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001). Quite simply, "implied causes of action" under *Bivens* are "disfavored." *Iqbal*, 556 U.S. at 675; *see also Minneci v. Pollard,* 132 S. Ct. 617, 622-23 (2012) (recapping the Court's thirty-year history of declining to create a *Bivens* remedy).

A *Bivens* remedy is "not an automatic entitlement" but instead "is a subject of judgment." *Wilkie*, 551 U.S. at 550. Courts must refrain from inferring a *Bivens* cause of action either when there is an (1) "alternative, existing process for protecting" the constitutional interests at issue, or (2) when there are other "special factors counseling hesitation" against a judicially-created remedy. *Id.* Here, this Court should refrain from inferring a *Bivens* remedy under both prongs of the *Wilkie* test.

### a. The INA's Comprehensive Scheme Precludes A *Bivens* Remedy

The existence of a deliberately crafted statutory scheme forecloses a *Bivens* remedy because it demonstrates that Congress did not intend to allow a private right of action for damages. *Schweiker v. Chilicky*, 487 U.S. 412, 421-25 (1988). As the Supreme Court has made clear, courts must reject extending *Bivens* "[w]hen the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations." *Id.* at 423. To hold otherwise would intrude "in an area that ha[s] received careful attention from Congress."[1] *Id.*

In addition, a *Bivens* remedy should not be created even if the comprehensive framework established by Congress provides *no* remedy at all. *Schweiker*, 487 U.S. at 425; *cf. Spagnola v. Mathis*, 859 F.2d 223, 228 (D.C. Cir. 1988) (en banc) (noting that a comprehensive remedial scheme "precludes Bivens actions" even when a plaintiff has "no remedy whatsoever" under that scheme). "The question is not what remedy the court should provide for a wrong that would otherwise go unredressed." *Bush*, 462 U.S. at 388. Rather, the inquiry "is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy." *Bush*, 462 U.S. at 388; *accord Rollins*, 937 F.2d at 138; *see also, e.g., Schweiker*, 487 U.S. at 429 (declining to infer a *Bivens* remedy because, despite the shortcomings of the remedy under the Social Security Disability Act, Congress "is the body charged with making the inevitable compromises required in the design of a massive and complex welfare benefits program").

---

[1] For example, the Supreme Court has refused to recognize a *Bivens* remedy in cases involving federal personnel disputes because "such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies." *Bush v. Lucas*, 462 U.S. 367, 368 (1983); *accord Rollins v. Marsh*, 937 F.2d 134, 138-139 (5th Cir. 1999); *see also Zuspann v. Brown*, 60 F.3d 1156, 1161 (5th Cir. 1995) (declining *Bivens* remedy because "Congress has set up an elaborate remedial structure" with respect to VA benefits).

Plaintiff's detention and subsequent removal proceedings are governed by the INA. The Supreme Court has characterized the INA as the "'comprehensive federal statutory scheme for regulation of immigration and naturalization.'" *Chamber of Commerce of U.S. v. Whiting*, 131 S. Ct. 1968, 1973 (2011) (quoting *DeCanas v. Bica*, 424 U.S. 351, 353 (1976)). The reason for that is easily illustrated: The INA includes detailed provisions governing removal proceedings before an IJ and sets forth procedural safeguards for those proceedings. *See, e.g.,* 8 U.S.C. § 1229a. It also provides specific procedures for detention as well as requirements for relief from detention. *See, e.g.*, 8 U.S.C. §§ 1225, 1226, 1231. Indeed, the INA allows immigration detainees to raise certain constitutional challenges to the fact of their detention both in their removal proceedings and on a petition for review in a court of appeals. *See* 8 U.S.C. §§ 1252(a)(2)(D), 1252(b)(9). And it allows suspected aliens claiming to be *U.S. citizens* to seek review of their citizenship in the appellate courts. *See* 8 U.S.C. § 1252(b)(5).

Congress has limited judicial review of immigration decisions except as specified under the INA. *See* 8 U.S.C. §§ 1252(b)(9), 1252(a)(2)(B)(ii), 1252(b)(5)(C), 1252(g) §. In fact, the INA provides that a petition filed in the appropriate *court of appeals* is the "sole and exclusive" means for judicial review of constitutional claims arising from immigration proceedings. 8 U.S.C. §§ 1252(a)(2)(D) & (a)(5); *see also Nken v. Holder*, 556 U.S. 129, 424 (2009) (explaining that recent amendments have "limited the availability of judicial review and streamlined all challenges to a removal order into a single proceeding: the petition for review"). To put a point on this, the Supreme Court has held that § 1252(g) divests district courts of jurisdiction to consider any claim – even constitutional claims – arising from the wrongful commencement of removal proceedings. *Reno v.*

*American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 487 (1999) ("*AADC*"). The "theme" of the INA is "aimed at protecting the Executive's discretion from the courts."[2]    *Id.* at 486.

Because the INA is a comprehensive statutory scheme that defines the particular process for seeking redress, the Ninth Circuit recently held that there is no *Bivens* remedy for constitutional claims challenging wrongful detention in deportation proceedings. *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2012), *cert. denied,* 133 S. Ct. 2336 (2013). Adopting the Second Circuit's reasoning, the court recognized that "'Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration.'" *Id.* at 982 (quoting *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir.2009) (en banc)). Therefore, the court "decline[d] to extend *Bivens* to allow the [plaintiffs] to sue federal agents for wrongful detention pending deportation given the extensive remedial procedures available." *Id.* at 983. Because the plaintiffs in *Mirmehdi* had the opportunity under the INA (and via habeas proceedings) to protect their constitutional interests, they could not also pursue damages under *Bivens*.[3]  *Id.*; *accord Dukureh v. Hullett*, No. C11–1866 TSZ, 2012 WL 3154966, **4-6 (W.D. Wash. Aug. 2, 2012) (dismissing Fourth and Fifth Amendment *Bivens* claims arising from placement in removal proceedings because the INA provided an alternative remedial process); *see also D'Alessandro v. Chertoff*, No. 10–CV–927A2011, 2011 WL 6148756, at *4 (W.D.N.Y. Dec. 12,

---

[2] Congress's decision to limit judicial review was no accident. It was designed to streamline decision-making in the immigration field, which in turn promotes the congressional goal of efficiency in removal proceedings. *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) (explaining that amendments to the INA were designed to "expedite" removal proceedings); *AADC*, 525 U.S. at 486-87 (explaining that Congress limited judicial review of the government's decisions to commence and adjudicate removal proceedings because it was concerned with the "deconstruction, fragmentation, and hence prolongation of removal proceedings").

[3] *Mirmehdi*'s reasoning finds ample support in Fifth Circuit cases dismissing analogous *Bivens* claims for lack of jurisdiction under the INA. *See, e.g., Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 945 (5th Cir. 1999) (Fourth Amendment *Bivens* claim challenging placement in removal proceedings barred by § 1252(g)) ; *Foster v. Townsley*, 243 F.3d 210, 214-15 (5th Cir. 2001) (excessive force, due process, and equal protection claims brought under *Bivens* barred by § 1252(g)); *see also Gupta v. McGahey,* 709 F.3d 1062 (11th Cir. 2013); *Sissoko v. Rocha*, 509 F.3d 947, 950 (9th Cir. 2007); *Elgharib v. Napolitano*, 600 F.3d 597, 601-02 (6th Cir. 2010) (collecting cases).

2011) (dismissing *Bivens* claim arising from wrongful detention in removal proceedings because the court would "not craft an additional remedy of money damages that is contemplated nowhere in the immigration statutes and regulations").[4]

The same is true in this case: Plaintiff had the opportunity to present his claims to the IJ, the BIA, other federal courts, and the court of appeals. *See, e.g.*, § 1252(b)(9). Because the INA provides a comprehensive remedial process, any *Bivens* claims should be dismissed. *See, e.g., Wilkie*, 551 U.S. at 550 (no *Bivens* remedy if there was an alternative "process" for protecting the constitutional interest); *accord Malesko*, 534 U.S. at 69 (citing *Schweiker*, 487 U.S. at 425-27); *Rollins*, 937 F.2d at 138-139; *Zuspann*, 60 F.3d at 1161.

---

[4] Even though the INA does not provide damages, "Congress's failure to include monetary relief can hardly be said to be inadvertent, given that despite multiple changes to the structure of appellate review in the [INA], Congress never created such a remedy." *Mirmehdi*, 689 F.3d at 982. In fact, an equitable remedy that brings about the cessation of an ongoing infringement is generally considered more important than one providing a backward-looking award of civil damages. *See United States v. Stanley*, 483 U.S. 669, 683 (1987) ; *Nixon v. Fitzgerald*, 457 U.S. 731, 754 n.37 (1982); *cf. Rauschenberg v. Williamso*n, 785 F.2d 985, 987-88 (11th Cir. 1986) (habeas corpus a special factor).

**b. The Political Branches' Plenary Power Over Immigration Precludes A *Bivens* Remedy**

In addition to the presence of a comprehensive statutory framework, courts must consider additional "special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Wilkie*, 551 U.S. at 550 (quoting *Bush*, 462 U.S. at 378). One such factor is when Congress has plenary power over the subject matter for which a *Bivens* remedy is sought. *See, e.g., Chappell v. Wallace*, 462 U.S. 296, 298-300 (1983) (Congress's plenary power over military matters counseled against implying a *Bivens* remedy); *accord Stanley*, 483 U.S. at 683-84.

That factor is satisfied here because the Supreme Court "has repeatedly emphasized that over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal quotations and citations omitted). Indeed, "the Supreme Court repeatedly has admonished that 'the power to expel or exclude aliens [i]s a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Dorelien v. United States Attorney General*, 317 F.3d 1314, 1317 n.7 (11th Cir. 2003) (quoting *Fiallo*, 430 U.S. at 792 (alteration in original) (quotation and citations omitted)). By way of analogy, "[t]he reasons that preclude judicial review of political questions also dictate a narrow standard of review of decisions made by the Congress or the President in the area of immigration and naturalization." *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)). Because Congress has plenary power over immigration matters and the Executive Branch is charged with implementing the nation's immigration laws, federal courts generally afford the political branches substantial deference in this area. *See INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (deference is "especially appropriate" because "officials exercise especially sensitive political functions that implicate

questions of foreign relations'") (quoting *INS v. Abudu*, 485 U.S. 94, 110 (1988)). Given the political branches' plenary authority over immigration issues, the Court should "stay its *Bivens* hand" in cases like this one and dismiss Counts 1-3. *Wilkie*, 551 U.S. at 554; *see also Humphries*, 164 F.3d at 945 n.10 ("In light of Congress's plenary power over matters concerning immigration, we will not ignore this statutory mandate [§ 1252(g)] in an effort to preserve Humphries' constitutional claims [under *Bivens*].") (citing *Reno v. Flores,* 507 U.S. 292, 305 (1993)); *cf. Cabral v. Holder*, 632 F.3d 886, 892-93 (5th Cir. 2011) (dismissing equal protection challenge based on Congress's authority to regulate admission and exclusion of aliens) (collecting cases).

For all the above reasons, this Court should not consider Plaintiff's claims to be a civil rights complaint under *Bivens*.  His claims are more properly brought under 28 U.S.C. § 2241.

### C.  Immunity Bars Suit Against Defendants In This Complaint.

#### 1.  Judges Performing Judicial Functions Are Granted Absolute Immunity

 Judges performing judicial functions within their jurisdiction are granted absolute immunity, and those entitled to this quasi-judicial immunity include federal hearing examiners and administrative law judges.    *Stump v. Sparkman*, 435 U.S. 349 (1978); *Butz v. Economou*, 438 U.S. 478, 514 (1978).   An immigration judge is also entitled to quasi-judicial immunity.   *See Herbst v. INS*, No. 98 CIV. 5533, 1999 WL 1052461, at 6 (S.D.N.Y. Nov 19, 1999); *Hernandez-Ortiz v. Godinez*, No. 88 C 5925, 1988 WL 129997, at *1 (N.D.Ill. Nov. 30, 1988); *Lartey v. U.S. Dept. of Justice*, 790 F.Supp. 130, 133 (W.D. La. 1992).

 It is well established that claims against judges for monetary damages are barred by the doctrine of absolute judicial immunity.   S*tump*.   Although the Supreme Court had once held that "judicial immunity is not a bar to prospective injunctive relief," *Pulliam v. Allen*, 466 U.S. 522,

541-42(1984); *accord Hernandez-Ortiz v. Godinez*, 1988 WL 129997 at *2 (immigration judges are

not immune from injunctive relief); the Federal Courts Improvement Act of 1996 reversed *Pulliam*

and now bars awards of injunctive relief against (state) judges for acts or omissions taken in their

judicial capacities in section 1983 actions.   See 42 U.S. § 1983.

Because § 1983 law is incorporated into *Bivens* actions, several courts, including courts in

the Second Circuit, have accordingly broadened the doctrine of judicial immunity for federal judges.

For example, in *Kampfer v. Scullin*, 989 F.Supp. 194, 201 (N.D.N.Y., 1997), the court found that the

doctrine of absolute judicial immunity barred *pro se* complainants' suit for injunctive relief against a

district court judge, and dismissed all claims on those grounds.   *See also Jones v. Newman*, No. 98

Civ. 7460, 1999 WL 493429 (S.D.N.Y., 1999) (dismissed the *pro se* complaints seeking injunctive

relief against a district court judge and circuit court judge.)

Even if Plaintiff had a *Bivens* remedy, he alleges no facts showing that ICE Chief Counsel

Gastelos had any personal involvement in – or even knowledge of – Plaintiff's detention or removal

proceedings.   (Habeas).   That is insufficient to state a claim. *Ashcroft v. Iqbal* 556 U.S. 662, 678

(2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.'") (quoting. *Twombly*, 550 U.S. at 555 ); *accord Rhodes v. Prince*, 360 F.

App'x 555, 559-560 (5th Cir. 2010) (dismissing Fourth Amendment claims on basis of conclusory

pleadings containing mere recitation of elements). Because Plaintiff has not pled "factual content"

tying the Chief Counsel to any interaction with Plaintiff, the *Bivens* claims should be dismissed.

*Patrick v. Wal-Mart, Inc.--Store No.* 155, 681 F.3d 614, 622 (5th Cir. 2012); *see also, e.g., Bowlby v.

City of Aberdeen, Miss.*, 681 F.3d 215, 227 (5th Cir. 2012) (affirming dismissal of equal protection

claims for lack of factual allegations); *Gentilello*, 627 F.3d at 545 (dismissing due process claim

because the plaintiff asserted a "bare legal conclusion" and "nowhere" pled any "factual basis for his alleged property interest").

Generously construing the complaint in Plaintiff's favor, it is conceivable that he seeks to hold the Chief Counsel liable on the basis of his supervisory position within ICE. (Habeas, p.2). But job-descriptions do not state a claim under *Bivens*: "[a]bsent vicarious liability, each Government official, *his or her title notwithstanding*, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677 (emphasis added); *see also Id.* at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's *own* individual actions, has violated the Constitution") (emphasis added).[5] In the *Bivens* context, "the term 'supervisory liability' is a misnomer." *Id.* Simply put, federal employees performing supervisory functions "may not be held accountable for the misdeeds of their agents." *Id.* The Chief Counsel is entitled to qualified immunity because Plaintiff has not demonstrated his participation in Plaintiff's detention, and the *Bivens* claims against him should be dismissed. *Cf. Lineberry v. United States*, 436 F. App'x 293, 295 (5th Cir. 2010) (dismissing *Bivens* claim because "conclusional allegations [we]re not supported by any specific facts showing [BOP Director's] personal involvement in the daily operation of the prison or that [the Director] personally implemented a deficient policy resulting in a constitutional violation"); *Argueta v. U.S. Immigration and Customs Enforcement*, 643 F.3d 60, 74-77 (3d Cir. 2011) (dismissing *Bivens* claims against high-level ICE officials because pleadings failed to demonstrate personal involvement in immigration raids).

---

[5] *See also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (in constitutional tort cases, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her"); *accord Arar*, 585 F.3d at 569; *Marcilis v. Twp. of Redford*, 693 F.3d 589, 596-97(6th Cir. 2012).

Therefore the Defendant's judges have absolute immunity against suit.

### 2. Immunity Covers Other Government Officials

Also, qualified immunity shields government officials performing discretionary functions from liability insofar as their conduct does not violate clearly established statutory of constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The doctrine of qualified immunity may, nevertheless, even protect employees who violate the Constitution from suit. *See Wilson v. Layne*, 526 U.S. 603, 614, 618 (1999)(holding that presence of media during execution of warrant violated Fourth Amendment but granting qualified immunity because right not clearly established).

In essence, qualified immunity gives public officials the benefit of the doubt so long as the law at the time of their conduct did not clearly prohibit their actions. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(per curiam)(describing qualified immunity as "accommodation for reasonable error"). Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 343 (1986). Thus, officials are immune from claims for damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Therefore, all Defendants named by Plaintiff have immunity for their actions.

### D. Plaintiff's Claims Have Been Adjudicated By Other Federal Courts.

Plaintiff filed a Complaint before a New Mexico federal court challenging an adverse action on an I-130 application and an order of removal that was dismissed. (Exh. J). Plaintiff filed another complaint before another New Mexico federal court under 28 U.S.C. § 2241 challenging his

detention, his removal order based on his criminal convictions, the denial of his I-130 petition, not fluent in English, and other claims. All of those claims were denied on July 10, 2013. (Exh. I). Plaintiff filed another habeas petition again, before a New Mexico federal court, complaining about his detention, his state criminal proceedings, his removal proceedings, and other claims. A United States Magistrate Judge on August 15, 2013 recommended that the habeas petition be denied. (Exh. K). Since all of Plaintiff's claims before this Court have already been ruled upon by another federal court, Plaintiff should not be allowed to raise them again before this Court.

### E. This Court Cannot Grant A Stay Of Removal As Requested By Plaintiff.

Plaintiff's order of removal by an IJ is not final since he has appealed the decision to the BIA. (Exh. M). Plaintiff cannot be removed from the United States until his removal order becomes final. *See* 8 U.S.C. § 1252(a)(1) (only final orders of removal are subject to judicial review). The REAL ID Act of 2005 provides that the sole and exclusive means for judicial review for an order of removal shall be by a court of appeals. 8 U.S.C. § 1252(a)(5). If the BIA denies Plaintiff's appeal, the removal order becomes final and Plaintiff's only other means for judicial review is the court of appeals. *Id.*

Exclusive jurisdiction to adjudicate removal proceedings and claims arising thereof is governed by 8 U.S.C.A. §1252. On May 11, 2005, the "Real ID Act of 2005" brought amendments to §1252 that made judicial challenges to the actions of immigration officials more difficult. Section 106(b) of the Real ID Act provided that all amendments to §1252 "shall take effect upon the date of the enactment of this division [May 11, 2005] and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division [May 11, 2005]." *Emergency Supplemental Appropriations Act for Defense, the Global*

*War on Terror, and Tsunami Relief, 2005*, Pub. L. No. 109-13, Div. B, Title I, §106(b), 119 Stat. 231, 311. For this reason, all of the provisions of §1252, as amended by the Real ID Act, are applicable to this case.

As amended, the Real ID Act provides that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28, or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C.A. §1252(b)(9). The statute appears to deprive the district court of jurisdiction over the plaintiffs' claims, for those clearly require review of questions of law or fact arising from a "proceeding brought to remove an alien."

Even if a court found 8 U.S.C.A. §1252(b)(9) inappropriate here, §1252(g) states that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C.A. §1252(g). Clearly, the expansive language of "any clause or claim" arising from the execution of removal orders includes the Bivens/tort claims in this case.

Courts have broadly interpreted the removal order as the precipitating act to subsequent lawsuits, leaving these suits subject to the jurisdiction-stripping provisions of §1252. In a 5th Circuit case, the court held that plaintiff's "claims of excessive force, denial of due process, denial of equal protection and retaliation are all directly connected to the execution of the deportation order.

Therefore, their acts fall within the ambit of section 1252(g) and are precluded from judicial review." *Foster v. Townsley*, 243 F.3d 210, 214 -215 (5th Cir. 2001) (provision of Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) limiting judicial review in transitional cases did not permit review of INS officer's decision to execute alien's deportation). *See also Humphries v. Various Federal USINS Employees*, 164 F.3d 936, 945 (5th Cir. 1999) (exclusion proceedings appeared to provide the most direct, immediate, and recognizable cause of plaintiff's injuries and are barred under §1252(g)). *See also Cardoso v. Reno*, 216 F.3d 512, 517 (5th Cir. 2000) (claim barred by §1252(g) because it implicated the execution of deportation order). §1252 bars this Bivens/tort suit because each claim arises from the decision to commence Mr. Talbot's removal proceedings.

Courts have held that "[a]ny attempt to challenge such an [removal] order, therefore, whether direct or collateral, must either find authorization in §1252(a)-(f) or be precluded to the extent that §1252(g) applies." *Humphries*, 164 F.3d at 942 (§1252 does not provide for civil damages). In no way does §1252 provide for the civil damages that Plaintiff is seeking here. Section §1252(g) even bars damages claims that arise from removal proceedings where the decision or action of the immigration officer was in clear violation of nondiscretionary duty. *See, e.g., Foster*, 243 F.3d at 214 (Bivens action barred against INS officers who violated nondiscretionary regulations). Furthermore, "[t]hese strict limitations apply not only to the Attorney General's positive actions, but also to his refusals to take action." *Gomez-Chavez v. Perryman*, 308 F.3d 796, 800 (7th Cir. 2002) (citation omitted). Consequently, the District Court is without jurisdiction to entertain the suit or to award damages.[6]

---

[6] In fact, a successful *Bivens* claim may require that the initial removal order have been overturned. A 2nd Circuit opinion states that plaintiff "has not demonstrated that his conviction has been invalidated in any manner." *Tavarez v. Reno*, 54 F.3d 109, 110 (2nd Cir. 1995) (*Bivens* action was not cognizable, absent demonstration by plaintiff that his conviction had

Therefore, this Court does not have jurisdiction to act on Plaintiff's request for a stay of the order of removal.

**F. Plaintiff Has Not Exhausted His Administrative Remedies.**

Plaintiff has had the opportunity to raise all his claims before other federal courts. (Exhs. I-L). Some of those claims are still pending. Plaintiff has appealed the IJ removal order to the BIA and therein had the opportunity to raise any and all claims. (Exh. M). The BIA decision is still pending. If the BIA denies Plaintiff's appeal, he may appeal to the court of appeals. 8 U.S.C. § 1252(a)(5).

Therefore, Plaintiff has not exhausted his administrative remedies and therefore cannot seek habeas review when review still exists at the BIA, before other federal courts and at the courts of appeal. *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992); See also, *Falek v.* Gonzalez, 475 F.3d 285, 289(5th Cir. 2007) (holding that a court may review a final order of removal if the alien has exhausted all administrative remedies as of right); Lee *v. Gonzales*, 410 F.3d 778, 786 (a petitioner must exhaust available avenues of relief and turn to habeas only when no other means of judicial review exists.); *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)(federal courts may require prudential exhaustion of administrative remedies where: "(1) agency expertise makes agency consideration necessary to generate a proper record and a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review").

---

been invalidated).

The Fifth Circuit further held that an alien "fails to exhaust his administrative remedies with respect to an issue when the issue is not raised in the first instance with the BIA." *Falek* at 289.

In this case, because the BIA has not yet rendered its decision on Plaintiff's claims or upheld the IJ's removal order, Plaintiff has not yet exhausted his administrative remedies and this Court therefore does not have jurisdiction. *See Falek*, 475 F.3d at 289. Moreover, if the BIA ultimately issues a final removal order in this case, the Plaintiff may bring a petition for review only in the appropriate court of appeals, not in this Court. *See* 8 U.S.C. § 1252(a)(2)(D) and RIDA. Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims, due to Plaintiff's failure to exhaust his administrative remedies, and this Court must dismiss the complaint.

**G. Plaintiff's Due Process Arguments Lack Merit.**

The real issue before this Court is whether Plaintiff is in custody in violation of the Constitution, law of treaties of the United States. Plaintiff is being detained pursuant to statutory authority during the period of his removal proceedings which are not yet concluded. 8 U.S.C. § 1226(c). This Court may not review the Attorney General's action or decisions pertaining to Plaintiff's pre-order detention. 8 U.S.C. § 1226(e). Plaintiff's detention is not indefinite. Plaintiff has not provided facts to support this Court's jurisdiction to hear his claims or that he is entitled to any relief on his claim.

Plaintiff claims that his detention and other government actions have deprived him of due process under the Fifth Amendment. (Habeas, pp. 1,5,6). These contentions are baseless and without merit. The Supreme Court held in *Denmore v. Kim* "that detention during deportation proceedings is a constitutionally valid aspect of the deportation process and comports with due process." *Denmore v.Kim*, 538 U.S. 510, 531 (2003). The Court further held that it had a long

25

standing view that the Government may constitutionally detain deportable aliens during the limited period necessary for their removal proceeding. *Id.* at 526. The due process rights of aliens are determined by the procedures established by Congress and the decisions of executive or administrative officers, acting within their powers expressly conferred by Congress are the due process of law. *Gisbert v. Attorney General*, 988 F.2d 1437, 1443 (5th Cir. 1993). Here, Plaintiff can show no denial of any due process rights that are available to him.

The fact that Plaintiff may be incarcerated longer than desired does not violate § 1226(a) or (c) nor substantive due process. Substantive due process bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them. *Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 672 n.3 (5th Cir. 2007). Here, Plaintiff's pre-final order detention is mandatory based on his criminal convictions. 8 U.S.C. § 1226(c). Plaintiff had an opportunity to go before an IJ to present all his claims in Plaintiff's removal proceedings which he has appealed to the BIA. (Exh. M). Plaintiff's claims have been heard by other federal courts. (Exhs. I–L). Plaintiff may be able to appeal to the courts of appeal. Therefore, Plaintiff has failed to exhaust his administrative remedies. *McCarthy* at 145; *Lee* at 786 (a petitioner must exhaust available avenues of relief and turn to habeas only when no other means of judicial review exists.).

Clearly, Plaintiff's detention is not indefinite and Plaintiff had been given full due process.

Plaintiff has provided no facts to support this court's jurisdiction to hear his due process claim or that he is entitled to any relief on his claims.

## V.     <u>CONCLUSION</u>

Plaintiff's Complaint is clearly a habeas petition.     His claims have been heard and denied by other federal courts.     Plaintiff's claims were raised before an IJ who ordered him removed to Mexico.   Plaintiff has appealed the IJ decision to the BIA.   Plaintiff has failed to exhaust his administrative remedies.   This Court does not have jurisdiction to grant a stay of removal (which is not ripe) as requested by Plaintiff.     Plaintiff has provided no basis to assert a *Bivens* claim.     For all of these reasons, this Court should deny this Complaint.

<div style="margin-left: 40%;">

Respectfully submitted,

**ROBERT PITMAN**
United States Attorney

BY:     <u>/s/Gary L. Anderson</u>
**GARY L. ANDERSON**
Assistant United States Attorney
601 NW Loop 410, Suite 600
San Antonio, Texas. 78216
Texas State Bar No. 01219000
Tel. No. (210) 384-7365
Fax. No. (210) 384-7312

Attorneys for Respondents

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of September 2013, the foregoing was filed electronically.

Notice of this filing will be sent to the following by certified mail, return receipt requested, on this the

11th day of September 2013:

Sergio Mata Aguilar
A# 091-438-120
26 McGregor Range Road
Chaparral, MN 88081

/s/ Gary L. Anderson
**GARY L. ANDERSON**
Assistant United States Attorney

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **SERGIO MATA AGUILAR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **CIVIL NO. EP-13-CV-00141-FM** |
| | § | |
| **ELIAS GASTELOS, JR., Chief Counsel;** | § | |
| **GUADALUPE R. GONZALEZ, Immigration** | § | |
| **Judge; BOARD OF IMMIGRATION** | § | |
| **APPEALS,** | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

On this day, came on for consideration Defendants' Motion to Dismiss Plaintiff's Complaint.

The Court having reviewed Plaintiff's Complaint and the Motion to Dismiss filed by Defendants

finds that Plaintiff's Complaint should be **DENIED** on all grounds.

IT IS SO ORDERED.

Signed and entered this _____ day of_____, 2013.

_____
**FRANK MONTALVO**
UNITED STATES DISTRICT JUDGE